T. H. GONZALEZ *v.* UNITED STATES (No. 5195)*

*C.A.D. 918.

United States Court of Customs and Patent Appeals, May 25, 1967

*Stein and Shostak* (*Marjorie M. Shostak*, of counsel) for appellant.
*Barefoot Sanders*, Assistant Attorney General, *Alan S. Rosenthal, Robert C. McDiarmid* for the United States.

[Oral argument April 4, 1967 by Miss Shostak and Mr. McDiarmid]

Before WORLEY, Chief Judge, RICH, SMITH, ALMOND, Associate Judges, and WILLIAM H. KIRKPATRICK**

RICH, Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, 53 Cust. Ct. 149, C.D. 2487, overruling the importer's protest against the classification of the imported merchandise as fluorspar containing *not more than* 97% calcium fluoride. The importer claims that it contains *more than* 97% calcium fluoride.

The imported merchandise was classified under paragraph 207 of the Tariff Act of 1930 which provides in part:

> * * * fluorspar * * * containing not more than 97 per centum of calcium fluoride, $8.40 per ton * * *.

It is claimed under the same paragraph, as modified by T.D. 52739, which provides in part:

> Fluorspar, containing over 97% of calcium fluoride_____ $2.10 per ton

The only issue, therefore, is whether the fluorspar of the importation contains more than 97% calcium fluoride. The Customs Court held it does not. We affirm.

The merchandise was part of a three-car shipment imported from Mexico. Samples were taken from each car and analyzed by the United States Customs Laboratory in New Orleans. It was there determined that the samples from two of the cars contained more than 97% calcium fluoride but that samples of the merchandise in issue here, taken from the third car, contained less than 97% calcium fluoride. The average calcium fluoride content of the latter samples was 96.64%.

Appellant attacks this determination on several grounds. He suggests that the method used for the fluorspar analysis was less accurate than other methods and therefore improper; that, regardless of accuracy, "commercial" methods of testing are required by the tariff laws; and that, in any event, the samples on which the analyses in question were run were not typical of the importation, since they were taken from only one of the three cars.

---

**Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

The Customs Court, in overruling the protest, found the method used by the government to be the most accurate one and the calcium fluoride percentage thereby established to be correct. It further found no justification for ascribing to Congress any intent to prescribe commercial tests for calcium fluoride determinations. Appellant did not question the sampling technique before the Customs Court.

Judge Donlon concurred in the result below because of appellant's acceptance of the favorable analyses of the other two carloads. She evidently felt that appellant was thus estopped to object to the results obtained by the similar, unfavorable analyses of the third carload.

Appellant's attack on the accuracy of the analytical method employed by the government chemists is based on several arguments. We are told, first of all, that "there is no scientifically accurate method for determining the exact calcium fluoride content of fluorspar." In support of this proposition appellant argues that the method employed involves an experimental error of $\pm 0.25\%$; that it is empirically derived; and that a control sample of 94.83% calcium fluoride is used. We are further told that the method here employed is subject to mechanical losses.

We note in passing that the results of the government's analyses are not within 0.25% of the 97% required to sustain appellant's protest, that the empirical basis of any method is hardly determinative of its accuracy, and that likelihood of error consequent upon the use of a control sample so similar to that analyzed seems to us remote. We do not, however, predicate our decision on these reflections.

The Customs Court has found as a fact that the method employed by the government is the most accurate. ▮ Appellant, to prevail here, must show clear error in that determination. *United States* v. *F. W. Myers*, 45 CCPA 48, C.A.D. 671. He has not done so.

The method used was "Customs Method 207.1," a modification of the method prescribed by the Bureau of Standards for fluorspar analysis. Appellant's witnesses testified that there were several other acceptable methods and, in fact, certain objectionable features to the Customs method, chief among which was the number of manipulative steps. Appellant introduced his own analyses of the imported merchandise, using the other methods. These showed the fluorspar to contain in excess of 97% calcium fluoride.

The government introduced the testimony of several chemists in whose opinion the Customs method was the most accurate. The government also introduced its analyses of the imported fluorspar and those of a private laboratory (to which a sample has been sent by appellant) which showed a calcium fluoride content of less than the requisite 97%. The testimony for the government also tended to explain the higher results in appellant's tests as due to a tendency of the

methods employed to include certain impurities in the calcium fluoride determination.

We see no clear error in the Customs Court evaluation of the evidence as showing generally the reliability of the government's methods and, in particular, its accuracy in these analyses. We do not, in fact, see how it could have decided otherwise.

■ Nor do we find any merit in appellant's contention that "it is not the scientific, or theoretical, method of analysis which is accepted as fixing Customs duties; rather it is *the commercially accepted practical method* which is to prevail." This principal is derived, primarily it seems, from two of this court's decisions, *United States* v. *Fred Whitaker Co.*, 40 CCPA 19, C.A.D. 492 (1952), and *United States* v. *Consolidated Kansas City Smelting & Refining Co.*, 8 Ct. Cust. Appls. 406, T.D. 37665, 34 Treas. Dec. 487 (1918), in which it was held that Congress intended that certain analyses be made by commercial methods. In the *Consolidated* case, for instance, the provision in question had been enacted against a background which included a judicial decision [1] which required the use of the "commercial" method for assaying lead ores and a conforming administrative practice. The legislative intent to continue this requirement was seen in the adoption of language similar to that of the previous statute. The very inquiry into congressional intent shows that no principle such as that urged by appellant was adopted. In *Fred Whitaker Co.*, also, evidence of intent was sought and found. Appellant here has adduced no such evidence.

■ The propriety of the sampling technique in the light of commercial realities, not questioned below, is not the kind of issue we will consider for the first time on appeal. *U.S. Wolfson Bros. Corp.* v. *United States*, 52 CCPA 46, C.A.D. 856.

The judgment of the Customs Court is *affirmed*.

WORLEY, C.J., did not participate.

---

[1] *In re Puget Sound Reduction Co.*, 96 Fed. 90 (D. Conn. 1899). The court in *Puget Sound* perceived the congressional intent in statutes dealing specifically with the method of assaying lead ore for customs purposes.
*C.A.D. 919.